# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | |
| **Plaintiff,** | Case No.: 22-cv-21997 |
| **v.** | Hon. _____ |
| EMERSON PIRES, FLAVIO GONCALVES, JOSHUA NICHOLAS, AND EMPIRES CONSULTING CORP., | |
| **Defendants.** | **JURY TRIAL DEMANDED** |

## COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF

The Commodity Futures Trading Commission ("CFTC" or "Commission"), an independent federal agency, alleges as follows:

### I.     INTRODUCTION

1.      Beginning in at least September 2020 and continuing through the present ("Relevant Period"), Emerson Pires ("Pires"), Flavio Goncalves ("Goncalves"), Joshua Nicholas ("Nicholas"), and Empires Consulting Corp. ("Empires Consulting") (collectively, "Defendants"), each acting individually and in concert with each other, have engaged in an ongoing scheme through which they fraudulently solicited individuals in the United States and elsewhere to trade commodity futures, options, and digital assets, among other products, through commodity interest pools under the name EmpiresX.  Defendants advertised that participants that funds contributed to the EmpiresX pools could, at the participants' election, be placed in a pool directly managed by EmpiresX's head trader Nicholas, or in a pool traded by an auto-trader system.  In addition, as part of their solicitation efforts, Defendants advertised EmpiresX as a

multi-level marketing scheme that would reward participants for inducing others to send money to the EmpiresX pools and recruited promoters to produce and distribute video solicitations to prospective participants.

2.      In connection with this fraudulent scheme, Defendants have accepted and pooled at least $41.6 million from over 12,500 individuals, including at least $14.3 million from over 2,300 individuals in the United States.  Defendants commingled at least some participant funds with Defendants' funds, deposited approximately only $1 million of participant funds into trading accounts in the name of Empires Consulting, and used those funds to trade futures and options, among other products.  Empires Consulting, Pires, and Goncalves also misappropriated at least $5 million in participant funds for improper, non-investment purposes, including luxury travel, dining, car leases, shopping, and cash withdrawals.

3.      By November 2021, Empires Consulting stopped honoring participant withdrawal requests and to date, the majority of EmpiresX pool participants have not received their requested withdrawals.

4.      By soliciting participant funds for the purpose of trading in commodity interests, including binary options and futures contracts, accepting funds, and actually pooling at least some participant funds for the purpose of purchasing and selling commodity interests, Defendants operated EmpiresX as a commodity pool.  Empires Consulting functioned as a commodity pool operator ("CPO") without being registered with the Commission as such, and Pires, Goncalves, and Nicholas each functioned as an associated person ("AP") of a CPO without being registered with the Commission.

5.      By engaging in this conduct and the conduct further described herein, Defendants have violated certain anti-fraud and registration provisions of the Commodity Exchange Act

("Act"), 7 U.S.C. §§ 1–26.  Each Defendant violated Sections 4*o*(a)(1)(A) and (B) and 6(c)(1) of

the Act, 7 U.S.C. § 6*o*(a)(1)(A) & (B), 9(1), and Commission Regulation ("Regulation")

180.1(a)(1)–(3), 17 C.F.R. § 180.1(a)(1)–(3) (2021).  Pires, Goncalves, and Nicholas further

violated Section 4k(2), 7 U.S.C. § 6k(2), and Empires Consulting violated Section 4m(1),

7 U.S.C. § 6m(1), and Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2021).

6.      Unless restrained and enjoined by this Court, Defendants are likely to continue

engaging in the acts and practices alleged in this Complaint.

7.      Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, the Commission

brings this action to enjoin Defendants' unlawful acts and practices and to compel their

compliance with the Act.  The Commission also seeks civil monetary penalties and remedial

ancillary relief, including restitution to defrauded clients, disgorgement, pre- and post-judgment

interest, and such other equitable relief as this Court may deem necessary and appropriate.

## II.      JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action under 28 U.S.C. § 1331 (codifying

federal question jurisdiction) and 28 U.S.C. § 1345 (providing that district courts have original

jurisdiction over civil actions commenced by the United States or by any agency expressly

authorized to sue by Act of Congress).  In addition, Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a),

provides that district courts have jurisdiction to hear actions brought by the Commission for

injunctive and other relief or to enforce compliance with the Act whenever it shall appear to the

Commission that any person has engaged, is engaging, or is about to engage in any act or

practice constituting a violation of any provision of the Act or any rule, regulation, or order

thereunder.

9.      Venue properly lies with the United States District Court for the Southern District

of Florida pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because the Defendants have

transacted business in this District, and certain of the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District, among other places. Venue is also proper under 28 U.S.C. § 1391(b) because Defendants Nicholas and Empires Consulting reside in this District, and under 28 U.S.C. § 1391(c)(3) because Defendants Pires and Goncalves do not reside in the United States.

### III.    PARTIES

10.    Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1–26, and Regulations, 17 C.F.R. pts. 1–190 (2021).

11.    Defendant **Emerson Pires** was born in 1989 and resided in Port Saint Lucie, Florida and Fort Myers, Florida during portions of the Relevant Period.  Upon information and belief, Pires currently resides in Brazil.  Pires has been the registered agent and President of Empires Consulting throughout the Relevant Period.  Pires has never been registered with the Commission in any capacity.

12.    Defendant **Flavio Goncalves** was born in 1988 and resided in Port St. Lucie, Florida during portions of the Relevant Period.  Upon information and belief, Goncalves currently resides in Brazil.  During the Relevant Period, Goncalves has served as Vice President of Empires Consulting.  Goncalves has never been registered with the Commission in any capacity.

13.    Defendant **Joshua Nicholas** was born in 1994 and has resided in Stuart, Florida during the Relevant Period.  During the Relevant Period, Nicholas has served as the Head Trader for Empires Consulting.  Nicholas is not currently registered with the Commission.  He was registered with the Commission from October 2018 to November 2020 as an associated person of a commodity trading advisor ("CTA"), and was registered at various points in 2017 and 2018

as an associated person of an introducing broker.  In a decision dated April 19, 2021, the

National Futures Association ("NFA") accepted an Offer of Settlement from Nicholas and a

company founded and managed by Nicholas that, in relevant part, prohibited Nicholas from

applying for NFA membership for eight years and from "act[ing] or becom[ing] a principal of an

NFA Member at any time in the future."  On January 21, 2022, Nicholas entered into an

Acceptance, Waiver, and Consent with the Financial Industry Regulatory Authority ("FINRA"),

pursuant to which Nicholas consented to a bar from associating with any FINRA member in any

capacity.

  14. Defendant **Empires Consulting Corp.** is a Florida corporation formed on

October 14, 2020.  Empires Consulting maintains its principal place of business in Fort Myers,

Florida.  It has never been registered with the Commission in any capacity.

## IV. FACTS

### A.  Overview of the EmpiresX Scheme

  15. Beginning in or around September 2020, Empires Consulting, by and through its

employees and agents, launched EmpiresX, purportedly as a means for individuals to gain

"financial independence" and "[b]ecome involved in financial markets such as futures, options,

stock exchange and cryptocurrency."  Since that time, Defendants have solicited individuals to

invest funds with EmpiresX to trade commodity futures and options and other products on their

behalf.  Defendants solicited prospective participants via the company's website,

www.empiresx.com (the "EmpiresX Website"); in online videos posted on YouTube, Instagram,

and other social media platforms and websites; and in telephone calls and electronic messages.

Typically, Defendants represented that individuals could invest funds with EmpiresX in one of

two ways:  either in a "private investment" pool directly managed by Nicholas—described in

numerous communications as EmpiresX's "head trader"—or in a pool purportedly traded by an

automated trading program known as the "EX Bot," which Defendants told participants would "trade[] the pool for you" using Nicholas's trading as an input into its algorithm.

16.     Individuals who contributed funds to the EmpiresX pools received login credentials to the EmpiresX website, where they could view their account balances, activate the EX Bot, and watch the EX Bot trade on their behalf.  Participants were not required to sign an investment agreement before accessing their account, and they did not receive regular account statements.

17.     At the beginning of the Relevant Period, Defendants typically required EmpiresX participants to fund their accounts using cryptocurrencies including Bitcoin, Ether, or Tether. Later, Defendants relaxed this requirement and allowed participants to fund their accounts using fiat currency.  Throughout the Relevant Period, Defendants represented that cryptocurrency would be converted into fiat currency and transferred to trading accounts controlled by Empires Consulting.  Defendants also represented that once EmpiresX received participant funds, "then the members will start to receive their profits daily."

18.     According to Defendants, participant funds would be placed in a pool to be invested either by the EX Bot or Nicholas.  For example, in a video posted on or around October 11, 2021, Goncalves represented to participants and prospective participants that funds invested in a private investment pool would "go to a pool inside one of our brokers . . . and over there, inside this pool, our trader Josh [Nicholas] . . . and his team will trade that manually." Goncalves stated that for EX Bot accounts, "we already have the money inside a pool, and the bot trades that pool for you."

19.     In videoconferences with participants and prospective participants, Defendants represented that "your money will always stay under your control" and that "you can . . .

withdraw whenever you want, and control trading, times, [and] profits . . . ."  At certain times, Defendants represented that participants would be able to instantly withdraw funds from their account via cryptocurrency.  At other times, Defendants represented that EX Bot profits were available "Every Friday (Payments Every Monday)" while profits purportedly generated through the private investment pool were available "Every last day of the month (Payment On the Next Monday)."

20.     Defendants also designed EmpiresX as a multi-level marketing scheme.  In various video presentations, Defendants promoted the "opportunity" for participants to choose between being an "Investor" or an "Affiliate."  In certain videos, Pires stated that in order to qualify as an Investor, a participant was required to pay $400 for an annual license to use the EX Bot, while affiliates were required to pay $200 for an annual license to use the EX Bot.

21.     Defendants represented that Affiliates also could earn money by referring new participants to EmpiresX.  Affiliates who "sold" the EX Bot could earn sales commissions ranging from 1% to 5% of the license fees.  Investors and Affiliates were also promised 5% of the initial amount invested in EmpiresX by any referral, plus 0.2% (for Investors) or 0.6% (for Affiliates) of the daily profits generated by the referral's trading.  In addition, Investors and Affiliates could each earn additional commissions if their referrals also brought in new participants.

22.     According to Defendants, Investors and Affiliates who brought in enough participants and investment capital could earn prizes like smart watches, iPads, travel vouchers, or cars.  In or around July 2021, Pires represented to participants in a video posted to YouTube that "a few people" had already earned a compact car by bringing in more than $3.2 million in investments.

23.     On or around November 2, 2020, Pires opened a business bank account (the "Bank A Account") in the name of Empires Consulting.  The account opening documents identify Pires as the President of Empires Consulting and the authorized signatory for the Bank A Account.  In aggregate, Defendants caused $9,477,715 to be deposited into the Bank A Account between November 2, 2020 and February 22, 2022, including at least $8 million in funds received from pool participants.

24.     On April 5, 2021, Pires opened a futures trading account with the Account ID of xxxx5996 in the name of Empires Consulting (the "EX Trading Account").  In the account opening documents, Pires represented that Empires Consulting had an estimated liquid net worth of between one and five million, identified himself as the "owner-signatory, trader," and stated that he had over ten years of "extensive" experience trading options, commodities, and stocks. Pires selected the authorized user ID as "empire292" and indicated that communications should be sent to the email address "empiresfx@icloud.com."

25.     In connection the account opening process, Pires described Empires Consulting as follows:  "We specialize in management consulting where we aid business restructure debt and iMovie cash flows to further scale profit."  When asked if Empires Consulting was required to be registered as a CPO or CTA, Pires responded no, and he further confirmed that the account "will not be used to manage, custody, or pool client funds and the assets are solely [the] property of the applicant."

26.     On April 18, 2021, and in response to a query from the firm carrying the EX Trading Account, Pires represented that he is the "owner of Empires Consulting Corp and I confirm that I do not accept or solicit funds from outside investors."

27.     Of the approximately $9.4 million deposited into the Bank A Account, only approximately $1 million was transferred to the EX Trading Account.

**B.  Defendants' Material Misstatements**

28.     From at least September 2021 to December 2021, in weekly videoconferences with participants and prospective participants, Defendants knowingly made numerous misrepresentations and omissions of material fact.  These included statements that about the basic operation of the business, the use of participant funds, and the performance of the EX Bot.

29.     During the weekly videoconferences, Pires, Goncalves, and Nicholas each repeatedly represented that participant funds were being traded through what they claimed was an EmpiresX account with a well-known online electronic trading platform that offered trading in futures contracts, stocks, exchange-traded funds, and other assets.  For example, in a video made on or about October 14, 2021, Goncalves represented that the EX Bot was connected directly to that account, after which he and Nicholas showed participants what he represented to be the account page, with trade confirmation numbers that appeared to match the trade confirmation numbers displayed by the EX Bot.

30.     In fact, EmpiresX did not have an account with that electronic trading platform. Goncalves had registered and, on information and belief, designed a website that mimicked the trading platform's website, including using the same format and marks used by the platform. Defendants created and disseminated images of this fake website to induce participants to invest by misleading them into thinking that the EX Bot was actually trading their money.

31.     Defendants used this website to deceive participants about the amount of money being managed by EmpiresX.  For example, in a video made on or around September 2, 2021, Nicholas stated that the company was managing about $85 million, and Goncalves said the figure was closer to $92 million.  Similarly, in a video made on or around October 14, 2021,

Pires represented that the company was managing $100 million.  During each video, participants were shown the fake website.

32.     Defendants misrepresented what EmpiresX would buy and sell with participants' funds.  In numerous videos, Pires, Goncalves, and Nicholas represented that they "never" traded in cryptocurrencies like Bitcoin or Ether because they were too risky.  In fact, Defendants routinely held participants' funds in cryptocurrencies including Bitcoin, Ether, and Tether USDT tokens and, upon information and belief, used pool participant funds to trade cryptocurrencies.

33.     Defendants also misrepresented the EmpiresX pools' performance.  When a participant logged in to their EmpiresX accounts, they were shown account balances including positive investment returns and affiliate program income.  These amounts were false, and did not reflect trading in the participant's account or income actually received.

34.     In a video made on or around September 2, 2021, Goncalves falsely stated that EmpiresX had paid participants about $57 million of withdrawals and was at the time averaging about $6 million per week in payouts to participants.  There is no indication, aside from Goncalves's statements, that EmpiresX actually paid significant funds to pool participants.

35.     Defendants also misrepresented the registration status of EmpiresX and themselves.  In a video distributed to EmpiresX participants and prospective participants on or about July 30, 2021, Nicholas represented that he and EmpiresX had the appropriate licenses to trade on behalf of others, saying:  "If you're going to represent people, you need your representation license.  And so, that's what we have . . . .  It's very much real."  In fact, neither Nicholas nor anyone else affiliated with EmpiresX had obtained the required registration or license for the EmpiresX commodity pools, Empires Consulting, or themselves.

36.     Nicholas also made a series of misrepresentations about himself, including inflating his credentials.  In a video made on or around September 2, 2021, he stated:  "I got my MBA with a concentration in finance.  I'm currently working on a Ph.D.  I have a master's degree and three bachelor's degrees in accounting, finance, and economics."  In other videos, Nicholas represented that he had earned two master's degrees rather than one.  Nicholas did not have three bachelor's degrees, and he had not earned two master's degrees.

37.     Further, to conceal the prior disciplinary action against him levied by NFA, Nicholas misidentified himself in videos, using the name and FINRA Central Registration Depository number of another individual with a similar name.  The individual whom Nicholas impersonated did not have any disciplinary history.

38.     Throughout the Relevant Period, Defendants repeatedly represented to participants that EmpiresX was an "open-ended investment fund" they intended to eventually register with the Securities and Exchange Commission ("SEC") as a hedge fund.  In some communications, Goncalves and Nicholas suggested that they would need to surpass more than $110 million in assets under management before registering as a hedge fund.

39.     In a video made on or around September 9, 2021, Nicholas represented to investors that EmpiresX had completed the necessary paperwork and set up separate holding companies to register as a hedge fund.  At the same time, Nicholas displayed to viewers what appears to be a prospectus for a Delaware limited partnership called EmpiresX Fund Holdings, LP.  That document contained the following language:

> PURSUANT TO THE U.S. COMMODITY FUTURES TRADING COMMISSION (THE "CFTC") IN CONNECTION WITH POOLS WHOSE PARTICIPANTS ARE LIMITED TO QUALIFIED ELIGIBLE PERSONS, AN OFFERING DOCUMENT FOR THIS POOL IS NOT REQUIRED TO BE, AND HAS NOT BEEN, FILED WITH THE CFTC.

11

...

> YOU SHOULD ALSO BE AWARE THAT THIS COMMODITY POOL MAY TRADE FOREIGN FUTURES OR OPTIONS CONTRACTS.  TRANSACTIONS ON MARKETS LOCATED OUTSIDE THE UNITED STATES, INCLUDING MARKETS FORMALLY LINKED TO A UNITED STATES MARKET, MAY BE SUBJECT TO REGULATIONS WHICH OFFER DIFFERENT OR DIMINISHED PROTECTION TO THIS POOL AND ITS PARTICIPANTS.

40.     Empires Consulting never registered with the Commission as a CPO.

**C.  Commingling and Misappropriation of EmpiresX Participant Funds**

41.     During the Relevant Period, Empires Consulting, Pires, and Goncalves accepted and pooled at least $41.6 million from over 12,500 individuals, including at least $14.3 million from over 2,300 individuals in the United States.

42.     In addition to inducing participants and prospective participants to invest by using fraudulent solicitations, Defendants also commingled participant funds and used funds intended to trade with EmpiresX for their personal benefit.

43.     In aggregate, Empires Consulting, Pires, and Goncalves received and caused to be deposited into the Bank A Account more than $8 million dollars from participants in the United States.  During that time, only $1 million of pool participant funds was sent to the EX Trading Account.  Upon information and belief, no other participant funds were used to trade commodity interests.

44.     The other funds held in the Bank A Account were misappropriated by Empires Consulting, Pires, and Goncalves for their personal benefit, including more than $330,000 on debit card purchases for daily expenses including dining and shopping at luxury retailers.  In addition, Pires and Goncalves spent more than $250,000 on travel, including airfare, luxury hotels, and vacation rentals.  For example, on May 19, 2021, Pires and Goncalves wired $70,000

to a Florida company that leases exotic cars. Defendants made cash and ATM withdrawals totaling over $35,000. Pires and Goncalves also transferred over $400,000 to accounts they controlled.

45.     Participants were not informed that money transferred to EmpiresX would be used for purposes other than trading commodity interests or securities, including funding personal expenses of Pires and Goncalves.

**D.  Defendants Restricted Withdrawals from, and Shut Down, EmpiresX**

46.     Beginning in or around October 2021, Defendants directed EmpiresX participants and promoters to remove from the internet and delete any videos promoting EmpiresX. Nicholas called certain participants and directed them to delete any promotional videos regarding EmpiresX. In a notice posted on the EmpiresX website, Defendants stated that promotional materials "need[ed] to be revised and authorised by regulatory authorities in order to be posted in any internet platform or marketing material," and that EmpiresX had "been notified of these actions that need to be taken in order for the company to avoid issues with its registrations and processing." Defendants threatened to block participants' accounts if they did not remove or delete the videos. Defendants had not received any notice from the CFTC or the SEC regarding their marketing materials, registrations, or processing, nor, upon information and belief, had they been notified by any other regulatory agency or authority.

47.     Beginning at least as early as November 2021, EmpiresX restricted participants' ability to withdraw funds. In videos posted around this time, Pires and Goncalves asserted that participants were having difficulty withdrawing funds because of a "difficulty" with a cryptocurrency exchange that made it impossible for the company to transmit the funds. Pires and Goncalves assured participants that they would soon be able to withdraw their funds.

48.     For example, a participant in Utah gave EmpiresX $25,000 to trade in November 2021.  Beginning in December 2021, this participant repeatedly attempted to withdraw his funds without success.  By February 2022, despite showing profits of more than $15,000 in his account, Defendants still had not honored the participant's requests to withdraw money.

49.     As of the date of this filing, Defendants have continued to refuse to return requested funds to most, if not all, EmpiresX participants.  On February 22, 2022, Defendants caused $471,300, the amount of funds remaining, to be wired out of the Bank A Account, and closed the account.  Based on review of the Bank A Account, Empires Consulting, Pires, and Goncalves have misappropriated more than $5 million from U.S. participants.

## V.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT ONE

**Violations of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and
Regulation 180.1(a)(1)–(3), 17 C.F.R. § 180.1(a)(1)–(3) (2021)
Fraud
(Against All Defendants)**

50.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

51.     The Act in 7 U.S.C. § 9(1) makes it unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with any swap or contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, including in contravention of 17 C.F.R. § 180.1(a).

52.     The Regulations at 17 C.F.R. § 180.1(a) provide, in relevant part, that it shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the

rules of any registered entity, to intentionally or recklessly: (1) use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; (2) make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or (3) engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person.

53.     During the Relevant Period, as described above, Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1) by, among other things, in connection with any swap or contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, creating and disseminating fabricated account statements to pool participants and prospective participants.

54.     During the Relevant Period, as described above, Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(2) by, among other things, in connection with any swap or contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, making false and misleading statements of material fact, or omitting to state material facts, to pool participants and prospective participants. Defendants committed these violations by, among other things:

   a.  Falsely representing that performance of the EmpiresX pools, including the amount of purported profits in each participants' account

   b.  Falsely stating that participant funds were not being invested in cryptocurrency;

   c.  Misrepresenting the expected profits and risk of loss;

   d.  Misrepresenting Nicholas's background and trading history;

   e.  Overstating the assets under management at EmpiresX;

    f.   Misrepresenting the registration status of the Defendants;

    g.   Misrepresenting participant returns;

    h.   Using fabricated account statements and the fabricated electronic trading platform account to deceive pool participants and prospective participants; and

    i.   Failing to disclose that participant funds were commingled with Defendants' own funds.

55.    During the Relevant Period, as described above, Empires Consulting, Pires, and Goncalves violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(3) by, among other things, in connection with any swap contracts, sale of commodities in interstate commerce, or contracts for future delivery, misappropriating pool participant funds.

56.    Defendants directly engaged in the acts and practices described above intentionally, knowingly, or with reckless disregard for the truth of their representations or omissions.

57.    Pires and Goncalves directly or indirectly controlled Empires Consulting and did not act in good faith or knowingly induced, directly or indirectly, Empires Consulting's violations as alleged in this Count.  Accordingly, Pires and Goncalves are liable for Empires Consulting's violations of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)–(3) as controlling persons pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b).

58.    The acts and omissions of Pires, Goncalves, and Nicholas, and all other agents of EmpiresX, alleged herein occurred within the scope of their employment, office, or agency with Empires Consulting.  Accordingly, Empires Consulting is liable under 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2 (2021) for its agents' acts, failures in violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)–(3).

59.     Each use or employment or attempted use or employment of any manipulative device, scheme, or artifice to defraud; misrepresentation or omission of material fact; misappropriation; or act of engaging, or attempting to engage, in acts, practices or courses of business that operated or would have operated as a fraud or deceit; including but not limited to those specifically alleged herein, constitutes a separate and distinct violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)–(3).

**COUNT TWO**

**Violations of Section 4m(1) of the Act, 7 U.S.C. § 6m(1)**
**Failure to Register as a CPO**
**(Against Empires Consulting)**

60.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

61.     A commodity pool is defined in 7 U.S.C. § 1a(10) as "any investment trust, syndicate, or similar form of enterprise operated for the purpose of trading in commodity interests . . . ."

62.     A CPO is defined in 7 U.S.C. § 1a(11) as "any person . . . engaged in a business that is of the nature of a commodity pool, investment trust, syndicate or similar form of enterprise and who, in connection therewith, solicits, accepts, or receives from others, funds, securities or property . . . for the purpose of trading in commodity interests."

63.     During the Relevant Period, Defendants acted as a CPO by soliciting, accepting, or receiving funds from others for the purpose of trading in commodity interests.

64.     Subject to certain exceptions not relevant here, 7 U.S.C. § 6m(1) states that it shall be "unlawful for any commodity trading advisor or commodity pool operator, unless registered under this chapter, to make use of the mails or any means or instrumentality of

17

interstate commerce in connection with his business as such commodity trading advisor or commodity pool operator . . . ."

65.     Empires Consulting used the mails or means of interstate commerce in connection with its business as a CPO, while not being not registered with the Commission as a CPO.

66.     By reason of the foregoing, Empires Consulting violated 7 U.S.C. § 6m(1) by acting as a CPO without the benefit of registration with the Commission.

**COUNT THREE**

**Violations of Section 4k(2) of the Act, 7 U.S.C. § 6k(2)**
**Failure to Register as an Associated Person of a CPO**
**(Against Pires, Goncalves, and Nicholas)**

67.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

68.     Subject to certain exceptions not relevant here, 7 U.S.C. § 6k(2) states that it shall be "unlawful for any person to be associated with a commodity pool operator as a partner, officer, employee, consultant, or agent (or any person occupying a similar status or performing similar functions), in any capacity that involves the solicitation of funds, securities, or property for participation in a commodity pool . . . unless such person is registered with the Commission under this Act as an associated person of such commodity pool operator . . . ."

69.     During the Relevant Period, Pires, Goncalves, and Nicholas acted as associated persons of Empires Consulting, a CPO, by soliciting funds from others for participation in a commodity pool.

70.     Each of Pires, Goncalves, and Nicholas, while acting as an associated person of a CPO, was not registered with the Commission as an associated person of a CPO.

71.     By reason of the foregoing, each of Pires, Goncalves, and Nicholas violated 7 U.S.C. § 6k(2) by acting as an associated person of a CPO without the benefit of registration with the Commission.

**COUNT FOUR**

**Violations of Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A), (B)**
**Fraud and Deceit by a Commodity Pool Operator**
**(Against All Defendants)**

72.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

73.     During the Relevant Period, Empires Consulting acted as a CPO, and Pires, Goncalves, and Nicholas acted as APs of a CPO, by soliciting, accepting, or receiving funds from others for the purpose of trading in commodity interests.

74.     The Act at 7 U.S.C. § 6*o*(1)(A) and (B) make it unlawful for a CPO or an associated person of a CPO, "by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly . . . (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant."

75.     During the Relevant Period, Defendants, acting as a CPO or as APs of a CPO, committed fraud in violation of 7 U.S.C. § 6*o*(1)(A) and (B) by, among other things:

  a.  Falsely stating that participant funds were not being invested in cryptocurrency;

  b.  Misrepresenting the expected profits and risk of loss;

  c.  Misrepresenting Nicholas's background and trading history;

  d.  Overstating the assets under management at EmpiresX;

    e.   Misrepresenting the registration status of the Defendants;

    f.   Misrepresenting participant returns;

    g.   Using fabricated account statements and the fabricated electronic trading platform account to deceive pool participants and prospective participants; and

    h.   Failing to disclose that participant funds were commingled with Defendants' own funds.

76.    During the Relevant Period, as described above, Empires Consulting, Pires, and Goncalves, while acting as a CPO or as APs of a CPO, also committed fraud in violation of 7 U.S.C. § 6$o$(1)(A) and (B) by misappropriating pool participant funds.

77.    Pires and Goncalves directly or indirectly controlled Empires Consulting and did not act in good faith or knowingly induced, directly or indirectly, Empires Consulting's violations as alleged in this Count.  Accordingly, Pires and Goncalves are liable for Empires Consulting's violations of 7 U.S.C. § 6$o$(1)(A) and (B) as controlling persons pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b).

78.    Defendants Pires, Goncalves, and Nicholas committed the acts and omissions alleged herein within the scope of their employment, agency, or office with Empires Consulting. Accordingly, Empires Consulting is liable under 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2 (2021) as principal for its agents' acts, omissions, or failures in violation of 7 U.S.C. § 6$o$1(A) and (B).

79.    Each act of misappropriation, misrepresentation, or omission of material facts, made during the Relevant Period, including, but not limited to, those specifically alleged herein, constitutes a separate and distinct violation of 7 U.S.C. § 6$o$(1)(A) or (B).

## COUNT FIVE

### Violations of Regulation 4.20(c), 17 C.F.R. § 4.20(c):
### Commingling Funds by a CPO
### (Against Empires Consulting, Pires, and Goncalves)

80.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

81.     Under 17 C.F.R. § 4.20(c), a CPO may not "commingle the property of any pool that it operates or that it intends to operate with the property of any other person."

82.     During the Relevant Period, Empires Consulting caused pool participant funds to be commingled with funds of other persons, including funds belonging to Empires Consulting, Pires, Goncalves, and Nicholas.

83.     By reason of the foregoing, Empires Consulting commingled participant funds in violation of 17 C.F.R. § 4.20(c).

84.     Pires and Goncalves directly or indirectly controlled Empires Consulting and did not act in good faith or knowingly induced, directly or indirectly, Empires Consulting's violations as alleged in this Count.  Accordingly, Pires and Goncalves are liable for Empires Consulting's violations of 17 C.F.R. § 4.20(c) as controlling persons pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b).

85.     Each commingling of a pool participant's funds is alleged as a separate and distinct violation of 17 C.F.R. § 4.20(c).

### VI.     RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers:

A.    Find that:

    1)   Defendant Emerson Pires violated 7 U.S.C. §§ 6k(2), 6*o*(a)(1)(A) & (B), 9(1), and 17 C.F.R. §§ 4.20(c), 180.1(a)(1)–(3) (2021);

    2)   Defendant Flavio Goncalves violated 7 U.S.C. §§ 6k(2), 6*o*(a)(1)(A) & (B), 9(1), and 17 C.F.R. §§ 4.20(c), 180.1(a)(1)–(3) (2021);

    3)   Defendant Joshua Nicholas violated 7 U.S.C. §§ 6k(2), 6*o*(a)(1)(A) & (B), 9(1), and 17 C.F.R. § 180.1(a)(1)–(3) (2021); and

    4)   Defendant Empires Consulting violated 7 U.S.C. §§ 6m(1), 6*o*(a)(1)(A) & (B), 9(1), and 17 C.F.R. §§ 4.20(c), 180.1(a)(1)–(3) (2021).

B.    Enter an order of permanent injunction enjoining Empires Consulting, and its affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with it, who receive actual notice of such order by personal service or otherwise, from engaging in the conduct described above, in violation of 7 U.S.C. §§ 6m(1), 6*o*(a)(1)(A) & (B), 9(1) and 17 C.F.R. §§ 4.20(c), 180.1(a)(1)–(3) (2021).

C.    Enter an order of permanent injunction enjoining Emerson Pires, and his affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with him, who receive actual notice of such order by personal service or otherwise, from engaging in the conduct described above, in violation of 7 U.S.C. §§ 6k(2), 6*o*(a)(1)(A) & (B), 9(1) and 17 C.F.R. §§ 4.20(c), 180.1(a)(1)–(3) (2021).

D.    Enter an order of permanent injunction enjoining Flavio Goncalves, and his affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with him, who receive actual notice of such order by personal service or otherwise, from engaging in the conduct described above, in violation of 7 U.S.C. §§ 6k(2), 6*o*(a)(1)(A) & (B), 9(1) and 17 C.F.R. §§ 4.20(c), 180.1(a)(1)–(3) (2021).

E.    Enter an order of permanent injunction enjoining Joshua Nicholas, and his affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with him, who receive actual notice of such order by personal service or otherwise, from

engaging in the conduct described above, in violation of 7 U.S.C. §§ 6k(2), 6*o*(a)(1)(A) & (B), 9(1) and 17 C.F.R. § 180.1(a)(1)–(3) (2021).

     F.     Enter an order of permanent injunction restraining and enjoining Pires, Goncalves, Nicholas, and Empires Consulting, and their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, from directly or indirectly:

1) Trading on or subject to the rules of any registered entity (as that term is defined by Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

2) Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2021)), accounts held in the name of any Defendant or for accounts in which any Defendant has a direct or indirect interest;

3) Having any commodity interests traded on any Defendant's behalf;

4) Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

5) Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling of any commodity interests;

6) Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2021); and

7) Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2021)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9).

G.      Enter an order directing Emerson Pires, Flavio Goncalves, Joshua Nicholas, and Empires Consulting, as well as any third-party transferee and/or successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act and Regulations as described herein, including pre-judgment and post-judgment interest;

H.      Enter an order requiring Emerson Pires, Flavio Goncalves, Joshua Nicholas, and Empires Consulting, as well as any successors thereof, to make full restitution to every person who has sustained losses proximately caused by the violations described herein, including pre-judgment and post-judgment interest;

I.      Enter an order directing Emerson Pires, Flavio Goncalves, Joshua Nicholas, and Empires Consulting, as well as any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between, with or among Pires, Goncalves, Nicholas, or Empires Consulting and any of the participants whose funds were received by Empires Consulting as a result of the acts and practices that constituted violations of the Act and Regulations as described herein;

J.      Enter an order directing Defendants Emerson Pires, Flavio Goncalves, Joshua Nicholas, and Empires Consulting to pay civil monetary penalties assessed by the Court, in an amount not to exceed the penalty prescribed by Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, tit. VII, § 701, 129 Stat. 584, 599–600, *see* Regulation 143.8, 17 C.F.R. § 143.8 (2021), for each violation of the Act and Regulations, as described herein;

K.      Enter an order requiring Defendants Emerson Pires, Flavio Goncalves, Joshua Nicholas, and Empires Consulting to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2413(a)(2); and

24

L.      Enter an order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.


Dated:  June 30, 2022

                                Respectfully submitted,

                                */s Elizabeth N. Pendleton*

                                Benjamin E. Sedrish
                                Elizabeth N. Pendleton

                                Attorneys for Plaintiff
                                Commodity Futures Trading Commission
                                77 W Jackson Blvd., Ste. 800
                                Chicago, IL 60604
                                Tel. (312) 596-0700
                                Fac. (312) 596-0714
                                *bsedrish@cftc.gov*
                                *ependleton@cftc.gov*