**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-21997-CIV-ALTONAGA**

COMMODITY FUTURES
TRADING COMMISSION,

      Plaintiff,

v.

EMPIRES CONSULTING
CORP., *et al.*,

      Defendants.

_____/

**CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL MONETARY**
**PENALTY, RESTITUTION, AND OTHER EQUITABLE RELIEF**
**AGAINST DEFENDANT EMPIRES CONSULTING CORP.**

**THIS CAUSE** came before the Court on Plaintiff, the Commodity Futures Trading Commission ("Commission" or "CFTC") and Defendant, Empires Consulting Corp.'s ("Empires Consulting['s]" or the "Settling Defendant['s]") Joint Motion for Entry of Consent Order as to Defendant Empires Consulting Corp. [ECF No. 41]. The Court has carefully considered the Motion, the record, and applicable law.

**I.  INTRODUCTION**

On June 30, 2022, the CFTC filed a Complaint [ECF No. 1] against Defendants, Emerson Pires, Flavio Goncalves, Joshua Nicholas, and Empires Consulting seeking injunctive and other equitable relief for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26, and the

Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1–190 (2023).[1]

The CFTC and Empires Consulting, as directed by the Receiver, now seek to settle all charges alleged against Empires Consulting in the Complaint.

## II.  CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against the Settling Defendant without a trial on the merits or any further judicial proceedings, Empires Consulting:

1.      Consents to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendant Empires Consulting Corp. ("Consent Order");

2.      Affirms that it has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the CFTC or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order;

3.      Acknowledges service of the summons and Complaint;

4.      Admits the jurisdiction of the Court over it and the subject matter of this action under Section 6c of the Act, 7 U.S.C. § 13a-1;

---

[1] Empires Consulting is in receivership under a June 21, 2022 "Ex Parte Order Granting Plaintiffs' Emergency Ex Parte Motion for the Appointment of Receiver and Injunctive Relief Without Notice" (the "Receivership Order") entered in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida in *Eric Villanueva v. Empires X Corp.*, No. 22-010719 CA 44 (Miami-Dade Cir. Ct. 2024) (the "Class Action").  Under the Receivership Order, attorney Scott M. Dimond was appointed Receiver over Empires Consulting (the "Receiver") for all purposes, including the recovery of assets to compensate victims of misconduct by Empires Consulting (the "Receivership Estate").

References to "Defendants" shall be to Pires, Goncalves, Nicholas, and Empires Consulting, but not the Receiver or Receivership Estate.

5.      Admits the jurisdiction of the CFTC over the conduct and transactions at issue in this action under the Act;

6.      Admits that venue properly lies with the Court under 7 U.S.C. section 13a-1(e);

7.      Waives:

(a)      Any and all claims that it may possess under the Equal Access to Justice Act, 5 U.S.C. section 50 and 28 U.S.C. section 2412, and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt, 148 (2023), relating to, or arising from, this action;

(b)      Any and all claims that it may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–53, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C. section 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

(c)      Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d)      Any and all rights of appeal from this action;

8.      Acknowledges that the Commission is the prevailing party in this action for purposes of the waiver of any and all rights under the Equal Access to Justice Act specified in subpart (a) of paragraph 7 above;

9.      Consents to the continued jurisdiction of the Court over it for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Empires Consulting now or in the future resides outside the Court's jurisdiction;

10.      Agrees that it will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waives any objection based thereon;

11.     Agrees that neither it nor any of its agents or employees under its authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation of the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect the Settling Defendant's and/or its agents' and/or employees': (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the CFTC is not a party.  The Settling Defendant shall comply with this agreement and shall undertake all steps necessary to ensure that its agents and/or employees under its authority or control understand and comply with this agreement.  The parties understand and agree that, to the extent that the Commission brings an enforcement action against any employee or agent of Empires Consulting arising from the same nexus of facts as this Consent Order, this provision shall not apply to actions or public statements by such employee made in connection with that enforcement action;

12.     Consents to the entry of this Consent Order without admitting or denying the allegations of the Complaint or any findings or conclusions in this Consent Order, except as to jurisdiction and venue, which it admits;

13.     Consents to the use of the findings and conclusions in this Consent Order in this proceeding and in any other proceeding brought by the CFTC or to which the CFTC is a party or claimant, and agrees that they shall be taken as true and correct and be given preclusive effect therein, without further proof;

14.     Does not consent to the use of this Consent Order, or the findings and conclusions herein, as the sole basis for any other proceeding brought by the Commission or to which the

Commission is a party, other than a: proceeding in bankruptcy, or receivership; or proceeding to enforce the terms of this Consent Order; and

15.     Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against it in any other proceeding.

### III.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised, finds there is good cause for the entry of this Consent Order and that there is no just reason for delay.  The Court therefore directs the entry of the following findings of fact, conclusions of law, permanent injunction and equitable relief under Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein.  The findings and conclusions in this Consent Order are not binding on any other party to this action.  The parties agree and the Court finds the following:

### A.     Findings of Fact

**The Parties**

16.     Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act and the Regulations.

17.     Defendant Empires Consulting Corp. was, at all times relevant to the Complaint, a Florida corporation with its principal place of business in Fort Myers, Florida.  On June 10, 2022, the Class Action was filed against Empires Consulting and others in the Circuit Court in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.  The Class Action court appointed Scott M. Dimond, Esq. as Receiver to take control of and preserve all assets held by Empires Consulting, among other corporate defendants in the Class Action.  *See Eric Villanueva*

*v. Empires X Corp.*, No. 22-010719 CA 44, *Ex Parte* Order [D.E. 12], filed on June 21, 2022 (Miami-Dade Cir. Ct. 2024).   Subsequently, on September 23, 2022, Empires Consulting was administratively dissolved.   Empires Consulting has never been registered with the CFTC in any capacity.

### Other Relevant Individuals

18.     Non-settling Defendant Pires is a citizen of Brazil.   Pires served as President of Empires Consulting.   On June 30, 2022, Pires was indicted in connection with the conduct described herein.   *See generally United States v. Pires*, No. 22-20296-cr, Indictment [ECF No. 1], filed June 30, 2022 (S.D. Fla. 2023) (the "Criminal Case").   Pires has never been registered with the CFTC in any capacity.

19.     Non-settling Defendant Goncalves is a citizen of Brazil.   Goncalves served as Vice President of Empires Consulting.   Goncalves was also indicted in the Criminal Case.   Goncalves has never been registered with the CFTC in any capacity.

20.     Non-settling Defendant Nicholas is a United States citizen who resided in Martin County, Florida.   Nicholas was also indicted in the Criminal Case and pleaded guilty to one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. section 371.   *See generally United States v. Nicholas*, No. 22-20296-cr, Plea Agreement [ECF No. 25], filed September 8, 2022 (S.D. Fla. 2023).   On November 29, 2022, Nicholas was sentenced to 51 months' imprisonment, *see generally United States v. Nicholas*, No. 22-20296-cr, Judgment in a Criminal Case [ECF No. 48], filed November 29, 2022 (S.D. Fla. 2023); and on March 6, 2023, the court in the Criminal Case amended the judgment against Nicholas, imposing a restitution amount of $3,379,527.18, *see generally United States v. Nicholas*, No. 22-20296-cr, Order to Amend Judgment and Impose Restitution [ECF No. 56], filed March 6, 2023 (S.D. Fla. 2023).   Prior to

the events alleged in the Complaint, Nicholas was registered with the CFTC as an associated person of an introducing broker.  At all times relevant, Nicholas was not registered with the CFTC in any capacity.

**The EmpiresX Scheme**

21.    In or around 2020, Pires and Goncalves founded Empires Consulting, which did business as "EmpiresX."

22.    Empires Consulting, by and through its employees and agents all doing business as EmpiresX, solicited individuals in the United States and elsewhere to trade commodity futures, options, and other products through two commodity pools (the "EmpiresX Pools").  An employee acting on behalf of Empires Consulting told potential pool participants that one of the commodity pools would buy and sell financial instruments using the "EX Bot," an automated trading program, and the other would be traded directly by the company's head trader.  Empires Consulting represented that the EX Bot's trading algorithm would use the head trader's own trading as an input.

23.    Empires Consulting solicited participation in the EmpiresX Pools through social media, online video calls, and in-person meetings.  Empires Consulting communicated with participants and prospective participants through online platforms and applications such as Zoom, YouTube, Telegram, and Facebook.

24.    Empires Consulting also operated and solicited participants through a website that was accessible to the public.  Participants in the EmpiresX Pools also accessed their accounts through the website.

25.    Pires and Goncalves, acting on behalf of Empires Consulting, conducted multiple online and in-person participant meetings, including with participants and prospective participants

in the Southern District of Florida, to promote EmpiresX, including the EX Bot, as well as the purported returns that participants could earn from the EmpiresX Pools.

### Defendants' Material Misstatements

26.     In online and in-person meetings, Pires and Goncalves, acting on behalf of Empires Consulting, aggressively touted and fraudulently marketed EmpiresX's EX Bot to pool participants and prospective participants despite knowing that their representations included multiple false and fraudulent statements.

27.     From at least September 2021 to December 2021, in weekly videoconferences with participants and prospective participants, Empires Consulting, through Pires and Goncalves, repeatedly represented that participant funds were being traded through what they claimed was an Empires Consulting account with a well-known online electronic trading platform that offered trading in futures contracts, stocks, exchange-traded funds, and other assets.

28.     Contrary to Defendants' representations regarding the EX Bot, Empires Consulting did not employ a proprietary trading bot that could execute transactions for participants and generate significant profits.

29.     Defendants also used the fake website to deceive participants about the amount of money being managed by Empires Consulting.  For example, in a video made on or around September 2, 2021, Nicholas, speaking on behalf of Empires Consulting, falsely stated that the company was managing about $85 million, and participants were shown the fake website to support this claim.

30.     Empires Consulting also misrepresented what the EmpiresX Pools would buy and sell with participant funds.  In numerous videos, an employee acting on behalf of Empires Consulting represented that the EmpiresX Pools "never" traded in cryptocurrencies like Bitcoin or

Ether because they were too risky.  In fact, Empires Consulting routinely held participant funds in cryptocurrencies including Bitcoin, Ether, and Tether USDT tokens, and used participant funds to trade cryptocurrencies.

31.     In total, Empires Consulting fraudulently obtained approximately $100 million from victim participants.

**Defendants' Shutdown of EmpiresX**

32.     Beginning in October 2021, an employee acting on behalf of Empires Consulting called certain participants and directed them to delete any promotional videos regarding the EmpiresX Pools.  In a notice posted on the Empires Consulting website, the company stated that promotional materials "need[ed] to be revised and authorised by regulatory authorities in order to be posted in any internet platform or marketing material," and that "EmpiresX had been notified of these actions that need to be taken in order for the company to avoid issues with its registrations and processing."  Empires Consulting had not received any notice from the CFTC or the Securities and Exchange Commission regarding their marketing materials, registrations, or processing; nor had they been so notified by any other regulatory agency or authority.

33.     Beginning in November 2021, Empires Consulting restricted participants' ability to withdraw funds purportedly because of a "problem" with a cryptocurrency exchange used by Empires Consulting.   In fact, Empires Consulting was routinely preventing participants from withdrawing funds from their accounts; and since November 2021, participants have been largely unable to withdraw their funds.

**B.**     **Conclusions of Law**

**Jurisdiction and Venue**

34.     The Court possesses jurisdiction over this action under 28 U.S.C. section 1331 (codifying federal question jurisdiction) and 28 U.S.C. section 1345 (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), provides that the CFTC may bring actions for injunctive relief or to enforce compliance with the Act or any rule, regulation, or order thereunder in the proper district court of the United States whenever it shall appear to the CFTC that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

35.     Venue properly lies with the Court under 7 U.S.C. section 13a-1(e), because Empires Consulting, as well as certain participants and prospective participants, resided in this District, and acts and practices in violation of the Act occurred within this District.

**Count I: Fraud**

36.     By the conduct described in paragraphs 15 through 49 of the Complaint and paragraphs 21 through 33 above, Empires Consulting Corp. cheated and defrauded, or attempted to cheat and defraud, and willfully deceived, or attempted to deceive, pool participants and prospective participants by, among other things, knowingly or recklessly making material misstatements of fact regarding the performance of the EmpiresX Pools, the registration status of EmpiresX, and the expected profits and risk of loss in violation of section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and regulation 180.1(a)(1)–(3), 17 C.F.R. § 180.1(a)(1)–(3) (2023).

**Count II: Failure to Register as a Commodity Pool Operator**

37.     By the conduct described in paragraphs 15 through 45 of the Complaint and paragraphs 21 through 33 above, Empires Consulting acted as a commodity pool operator ("CPO"), without first registering with the CFTC as such, and thereby violated section 4m(1) of the Act, 7 U.S.C. § 6m(1).

**Count IV: Fraud and Deceit by a Commodity Pool Operator**

38.     By the conduct described in paragraphs 15 through 49 of the Complaint and paragraphs 21 through 33 above, Empires Consulting, while acting as a CPO: (A) employed a device, scheme, or artifice to defraud any client or participant or prospective client or participant; and (B) engaged in transactions, practices, or courses of business that operated as a fraud or deceit upon any client or participant or prospective client or participant, in violation of section 4$o$(1)(A) and (B) of the Act, 7 U.S.C. § 6$o$(1)(A), (B).

**Count V: Commingling Funds by a Commodity Pool Operator**

39.     By the conduct described in paragraphs 15 through 49 of the Complaint and paragraphs 19 through 31 above, Empires Consulting, while acting as a CPO, commingled the property of pools it operated or that it intended to operate with the property of other persons, and thereby violated regulation 4.20(c), 17 C.F.R. § 4.20(c) (2023).

40.     The foregoing acts, omissions, and failures of Defendants Pires and Goncalves occurred within the scope of their employment, office, or agency with Empires Consulting; therefore, under section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and regulation 1.2, 17 C.F.R. § 1.2 (2023), Empires Consulting is liable for Pires's and Goncalves's acts, omissions, and failures in violation of sections 4$o$(1)(A) and (B) and 6(c)(1) of the Act, 7 U.S.C. §§ 6$o$(1)(A), (B), 9(1), and regulations 4.20(c) and 180.1(a)(1)–(3), 17 C.F.R. §§ 4.20(c), 180.1(a)(1)–(3) (2023).

41.     Unless restrained and enjoined by the Court, there is a reasonable likelihood that Empires Consulting will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## IV.  PERMANENT INJUNCTION

42.     Based upon and in connection with the foregoing conduct, under section 6c of the Act, 7 U.S.C. § 13a-1, Empires Consulting is permanently restrained, enjoined and prohibited from directly or indirectly:

a.      In connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly:  (1) use or employ, or attempt to use or employ, any manipulative devices, schemes, or artifices to defraud; (2) make, or attempt to make, any untrue or misleading statements of a material fact; (3) omit to state material facts necessary in order to make statements made not untrue or misleading; or (4) engage, or attempt to engage, in any acts, practices, or courses of business, which would operate or would operate as a fraud or deceit upon any person in connection with commodity transactions, in violation of section 6(c)(1) of the Act, 7 U.S. C. § 9(1), and regulation 180.1(a)(1)–(3), 17 C.F.R. § 180.1(a)(1)–(3) (2023);

b.      Acting as a CPO without registering with the CFTC under the Act as such, in violation of section 4m(1) of the Act, 7 U.S.C. § 6m(1);

c.      While acting as a CPO, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, (A) employing any device, scheme, or artifice to defraud any client or participant or prospective client or participant, or

(B) engaging in any transaction, practice, or course of business that operates as a fraud or deceit upon any client or prospective client or participant, in violation of section 4*o*(1)(A) and (B), 7 U.S.C. § 6*o*(1)(A), (B);

d.      While acting as a CPO, commingling the property of any pools it operates or that it intends to operate with the property of any other persons, in violation of regulation 4.20(c), 17 C.F.R. § 4.20(c) (2023).

43.     Defendant Empires Consulting is also permanently restrained, enjoined and prohibited from directly or indirectly:

a.      Trading on or subject to the rules of any registered entity (as that term is defined in section 1a(40) of the Act, 7 U.S.C. § 1a(40));

b.      Entering into any transactions involving "commodity interests" (as that term is defined in regulation 1.3, 17 C.F.R. § 1.3 (2023)) or digital asset commodities, including Bitcoin (BTC), Ether (ETH), and Tether tokens (USDT), for its own account or for any account in which it has a direct or indirect interest;

c.      Having any commodity interests or digital asset commodities, including Bitcoin (BTC), Ether (ETH), and Tether tokens (USDT), traded on its behalf;

d.      Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests or digital assets, including Bitcoin (BTC), Ether (ETH), and Tether tokens (USDT);

e.      Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests or digital assets, including Bitcoin (BTC), Ether (ETH), and Tether tokens (USDT);

f.     Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2023); and/or

g.     Acting as a principal (as that term is defined in regulation 3.1(a), 17 C.F.R. § 3.1(a) (2023)), agent, or any other officer or employee of any person (as that term is defined in section 1a(38) of the Act, 7 U.S.C. § 1a(38)) registered, exempted from registration, or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9).

## V.  RESTITUTION AND CIVIL MONETARY PENALTY

### A.    Restitution

44.    The Settling Defendant shall pay restitution in the amount of thirty-two million, one hundred seventy-eight thousand, three hundred ninety-seven dollars and zero cents ($32,178,397.00) ("Restitution Obligation").  The Restitution Obligation will be offset by the amount of: (1) any restitution payment made by any defendant in the Criminal Case; or (2) any restitution payment by the Receiver to the plaintiffs and/or a certified class in the Class Action.  If the Restitution Obligation is not paid immediately in full, post-judgment interest shall accrue on the unpaid portion of the Restitution Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. section 1961.

45.    To effect payment of the Restitution Obligation and the distribution of any restitution payments to EmpiresX pool participants, the Court appoints the National Futures Association ("NFA") as Monitor ("Monitor") upon discharge of the Receiver in the Class Action.

The Monitor shall receive restitution payments from the Settling Defendant and make distributions as set forth below.  Because the Monitor is acting as an officer of the Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

46.     The Settling Defendant shall make Restitution Obligation payments, and any post-judgment interest payments, under this Consent Order to the Monitor in the name "EmpiresX Restitution Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 320 South Canal Street, 24th Floor, Chicago, Illinois 60606, under cover letter that identifies the paying Defendant and the name and docket number of this proceeding.  Settling Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

47.     The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Settling Defendant's pool participants identified by the CFTC or may defer distribution until such time as the Monitor deems appropriate.  In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making distributions to eligible pool participants is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the CFTC.

48.     The Settling Defendant shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify the Settling

Defendant's pool participants to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments. The Settling Defendant shall execute any documents necessary to release funds that it holds in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

49.    The Monitor shall provide the Commission at the beginning of each calendar year a report detailing the disbursement of funds to Settling Defendant's pool participants during the previous year. The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

50.    The Monitor shall provide the Commission at the beginning of each calendar year a report detailing the disbursement of funds to EmpiresX pool participants. The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

51.    The amounts payable to each pool participant shall not limit the ability of any pool participant from proving that a greater amount is owed from Settling Defendant or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any pool participant that exist under state or common law.

52.    Under Rule 71 of the Federal Rules of Civil Procedure, each pool participant of Settling Defendant who suffered a loss is explicitly made an intended third-party beneficiary of this Consent Order and may seek to enforce obedience of this Consent Order to obtain satisfaction of any portion of the restitution that has not been paid by Settling Defendant to ensure continued

compliance with any provision of this Consent Order and to hold Settling Defendant in contempt for any violations of any provision of this Consent Order.

53.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendant's Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**B.    Civil Monetary Penalty**

54.     The Settling Defendant shall pay a civil monetary penalty in the amount of thirty-two million, one hundred seventy-eight thousand, three hundred ninety-seven dollars and zero cents ($32,178,397.00) ("CMP Obligation"). If the CMP Obligation is not paid in full immediately, post-judgment interest shall accrue on the unpaid portion of the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order under 28 U.S.C. section 1961.

55.     Settling Defendant shall pay its CMP Obligation and any post-judgment interest, by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> 6500 S. MacArthur Blvd.
> HQ Room 266
> Oklahoma City, OK 73169
> 9-amz-ar-cftc@faa.gov

56.     If payment by electronic funds transfer is chosen, the Settling Defendant shall contact the Federal Aviation Authority at the address above to receive payment instructions and shall fully comply with those instructions. Settling Defendant shall accompany payment of the

CMP Obligation with a cover letter that identifies the Settling Defendant and the name and docket number of this proceeding.  Settling Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

57.     Notwithstanding the foregoing or anything to the contrary, the Receiver is not and shall not be required to turn over assets or make any payments from the Receivership Estate other than as authorized or approved by the court in the Class Action

### C.     Provisions Related to Monetary Sanctions

58.     Partial Satisfaction: Acceptance by the CFTC or the Monitor of any partial payment of the Settling Defendant's Restitution Obligation or CMP Obligation shall not be deemed a waiver of its obligation to make further payments under this Consent Order, or a waiver of the CFTC's right to seek to compel payment of any remaining balance.

### D.     Cooperation

59.     Settling Defendant shall cooperate fully and expeditiously with the CFTC, including the CFTC's Division of Enforcement and any other governmental agency or any self-regulatory organization, in this action, and in any current or future CFTC investigation or action related thereto.  Settling Defendant shall also cooperate in any investigation, civil litigation, or administrative matter related to, or arising from, this action.

### VI.  MISCELLANEOUS PROVISIONS

60.     Until such time as the Settling Defendant satisfies in full its Restitution Obligation and CMP Obligation under this Consent Order, upon the commencement by or against the Settling Defendant of insolvency, receivership, or bankruptcy proceedings or any other proceedings for the settlement of the Settling Defendant's debts, all notices to creditors required to be furnished to the

CASE NO. 22-21997-CIV-ALTONAGA

Commission under Title 11 of the United States Code or other applicable law with respect to such

insolvency, receivership bankruptcy or other proceedings, shall be sent to the address below:

> Secretary of the Commission
> Office of the General Counsel
> Commodity Futures Trading Commission
> Three Lafayette Centre
> 1155 21st Street N.W.
> Washington, DC 20581

61.     Notice: All notices required to be given by any provision in this Consent Order,

except as set forth in paragraph 56, above, shall be sent certified mail, return receipt requested, as

follows:

Notice to CFTC:

> Robert T. Howell
> Deputy Director, Division of Enforcement
> Commodity Futures Trading Commission
> 77 W Jackson Blvd., Suite 800
> Chicago, IL 60604

All such notices to the CFTC shall reference the name and docket number of this action.

62.     Change of Address/Phone: Until such time as the Settling Defendant satisfies in

full its Restitution Obligation and CMP Obligation as set forth in this Consent Order, the Settling

Defendant shall provide written notice to the Commission by certified mail of any change to its

telephone number and mailing address within ten calendar days of the change.

63.     Entire Agreement and Amendments: This Consent Order incorporates all the terms

and conditions of the settlement among the parties hereto to date.  Nothing shall serve to amend

or modify this Consent Order in any respect whatsoever, unless:  (a) reduced to writing; (b) signed

by all parties hereto; and (c) approved by order of the Court.

64.     Invalidation: If any provision of this Consent Order or if the application of any

provision or circumstance is held invalid, then the remainder of this Consent Order and the

application of the provision to any other person or circumstance shall not be affected by the holding.

65.     Waiver: The failure of any party to this Consent Order or of any pool participant at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or pool participant at a later time to enforce the same or any other provision of this Consent Order.  No waiver of one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

66.     Continuing Jurisdiction of the Court: The Court retains jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by the Settling Defendant to modify or for relief from the terms of this Consent Order.

67.     Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon the following persons who receive actual notice of this Consent Order, by personal service or otherwise: (1) the Settling Defendant; (2) any officer, agent, servant, employee, or attorney of the Settling Defendant; and (3) any other persons who are in active concert or participation with any persons described in subsections (1) and (2) above.

68.     Authority: Attorney Scott M. Dimond, Esq. warrants that he has been appointed Receiver of Empires Consulting Corp., and that this Consent Order has been duly authorized by Empires Consulting Corp., and he has been duly empowered to sign and submit this Consent Order on behalf of Empires Consulting.

CASE NO. 22-21997-CIV-ALTONAGA

69.     Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

70.     Contempt: Settling Defendant understands that the terms of the Consent Order are enforceable through contempt proceedings to the fullest extent of applicable law, and that, in any such proceedings, it may not challenge the validity of this Consent Order.

71.     Agreements and Undertakings: Settling Defendant shall comply with all of the undertakings and agreements set forth in this Consent Order.

Accordingly, it is

**ORDERED AND ADJUDGED** that the Joint Motion for Entry of Consent Order as to Defendant Empires Consulting Corp. **[ECF No. 41]** is **GRANTED** as set forth above.

**DONE AND ORDERED** in Miami, Florida, this 15th day of March, 2024.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

21

**CONSENTED TO AND APPROVED BY:**

_/s Scott M. Dimond_____          _/s Benjamin E. Sedrish_____
Scott M. Dimond                              Benjamin E. Sedrish
Receiver                                     Elizabeth N. Pendleton
Empires Consulting Corp.                     Commodity Futures Trading Commission
                                             77 W Jackson Blvd., Suite 800
                                             Chicago, IL  60604
                                             bsedrish@cftc.gov
                                             ependleton@cftc.gov
Date: 3/13/2024_____                    (312) 989-9571


Approved as to form:                 Date: 3/13/2024_____

_/s Lorenz M. Pruss_____
Lorenz Michel Prüss
Dimond Kaplan & Rothstein, P.A.
2665 South Bayshore Dr., PH 2B
Coconut Grove, FL  33133
(305) 374-1920
lpruss@dkrpa.com