UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-21997-CIV-ALTONAGA

**COMMODITY FUTURES
TRADING COMMISSION**,

    Plaintiff,
v.

**EMERSON PIRES**, *et al.*,

    Defendants.

_____/

**ORDER FOR FINAL JUDGMENT BY DEFAULT, PERMANENT INJUNCTION,
CIVIL MONETARY PENALTIES, AND OTHER STATUTORY
AND EQUITABLE RELIEF**

On June 30, 2022, the Commodity Futures Trading Commission ("Commission" or "Plaintiff") filed a Complaint charging Defendants Emerson Pires, Flavio Goncalves, Joshua Nicholas, and Empires Consulting Corp. with violating provisions of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26, and certain Regulations ("Regulations"), 17 C.F.R. pts 1–190 (2024).  On December 4, 2023, Pires and Goncalves were properly served with the summons and Complaint pursuant to the Court's December 4, 2023 Order permitting service on each of them via email.  (ECF No. 28.)

Defendants Pires, Goncalves, and Nicholas have failed to appear or answer the Complaint within the time permitted by Federal Rule of Civil Procedure 12(a)(1).  Accordingly, the Commission filed a Motion to Direct Entry of Default and to Lift Stay [ECF No. 29] against them; on January 22, 2024, the Clerk entered Default [ECF No. 30] against them.  On January 22, 2024, the Court modified the entry of default to give Nicholas more time to respond to the Complaint.

(*See* [ECF No. 31]). After Nicholas failed to respond within the additional time provided to him, Default [ECF No. 35] was entered against him on January 31, 2024.

The Commission has moved the Court to grant final judgment by default against Defendants, order permanent injunctive relief, and impose a disgorgement obligation and a civil monetary penalty. The Court has carefully considered the Complaint, the allegations of which are well-pleaded and hereby taken as true, the Commission's memorandum in support of its Motion, the record in this case, and the Court being otherwise advised, it is hereby:

**ORDERED** that Plaintiff's Motion for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief against Defendants Emerson Pires, Flavio Goncalves, and Joshua Nicholas is **GRANTED**. Accordingly, the Court enters findings of fact, conclusions of law, and an Order of Final Judgment by Default for Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief ("Order") pursuant to Sections 6c and 6d of the Act, 7 U.S.C. § 13a-1, as set forth herein.

**I.     FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**A.     Findings of Fact**

   **The Parties**

   1.     Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1–26, and the Regulations promulgated thereunder, 17 C.F.R. pts. 1–190 (2024).

   2.     Defendant Emerson Pires is a citizen of Brazil. During all times relevant to the Complaint, Pires served as President of Empires Consulting. Pires has never been registered with the Commission in any capacity.

3. Defendant Flavio Goncalves is a citizen of Brazil. During all times relevant to the Complaint, Goncalves served as Vice-President of Empires Consulting. Goncalves has never been registered with the Commission in any capacity.

4. Defendant Joshua Nicholas is a United States citizen who, at all relevant times, resided in Martin County, Florida. Prior to the events alleged in the Complaint, Nicholas was registered with the Commission as an associated person of an introducing broker. At all relevant times, Nicholas was not registered with the Commission in any capacity.

5. Non-defaulting Defendant Empires Consulting Corp. ("Empires Consulting") was a Florida corporation with its principal place of business in Fort Myers, Florida. On September 23, 2022, Empires Consulting was administratively dissolved. Empires Consulting has never been registered with the Commission in any capacity.

**The EmpiresX Scheme**

6. In or around 2020, Pires and Goncalves founded Empires Consulting, which did business as "EmpiresX." Empires Consulting, by and through its employees and agents all doing business as EmpiresX, solicited individuals in the United States and elsewhere to trade commodity futures, options, and other products through two commodity pools (the "EmpiresX Pools"). An employee acting on behalf of Empires Consulting told potential pool participants that one of the commodity pools would buy and sell financial instruments using the "EX Bot," an automated trading program, and the other would be traded directly by Nicholas. Empires Consulting represented that the EX Bot's trading algorithm would use Nicholas's own trading as an input.

7. Pires and Goncalves solicited participation in the EmpiresX Pools through social media, online video calls, and in-person meetings. Empires Consulting communicated with participants and prospective participants through online platforms and applications such as Zoom, YouTube, Telegram, and Facebook.

8. Pires and Goncalves also operated and solicited participants through a website that was accessible to the public. Participants in the EmpiresX Pools also accessed their accounts through the website.

9. Pires, Goncalves, and Nicholas, acting on behalf of Empires Consulting, conducted multiple online and in-person participant meetings, including with participants and prospective participants in the Southern District of Florida, to promote EmpiresX, including the EX Bot, as well as the purported returns that participants could earn from the EmpiresX Pools. Empires Consulting was not registered as a commodity pool operator, and Pires, Goncalves, and Nicholas were not registered as associated persons of a commodity pool operator.

**Defendants' Material Misstatements**

10. In online and in-person meetings, Pires, Goncalves, and Nicholas, acting on behalf of Empires Consulting, aggressively touted and fraudulently marketed EmpiresX's EX Bot to pool participants and prospective participants despite knowing their representations included multiple false and fraudulent statements.

11. From at least September 2021 to December 2021, in weekly videoconferences with participants and prospective participants, Pires, Goncalves, and Nicholas repeatedly represented that participant funds were being traded through what they claimed was an Empires Consulting account with a well-known online electronic trading platform that offered trading in futures contracts, stocks, exchange-traded funds, and other assets.

12. Contrary to Defendants' representations regarding the EX Bot, Empires Consulting did not employ a proprietary trading bot that could execute transactions for participants and generate significant profits.

13. Defendants also used a fake website to deceive participants about the amount of money being managed by Empires Consulting. For example, in a video made on or around

September 2, 2021, an employee speaking on behalf of Empires Consulting falsely stated that the company was managing about $85 million, and participants were shown the fake website to support this claim.

14. Empires Consulting also misrepresented what the EmpiresX Pools would buy and sell with participant funds. In numerous videos, an employee speaking on behalf of Empires Consulting represented that the EmpiresX Pools "never" traded in cryptocurrencies like Bitcoin or Ether because they were too risky. In fact, Empires Consulting routinely held participant funds in cryptocurrencies including Bitcoin, Ether, and Tether USDT tokens, and used participant funds to trade cryptocurrencies.

15. In total, Empires Consulting fraudulently obtained at least $40 million from pool participants. Accounts controlled by Pires and Goncalves received approximately $10,388,876 from pool participants, and digital wallets controlled by them retained $22,816,788 in digital assets. Nicholas was paid $289,000 for his work on the EmpiresX scheme.

16. After subtracting amounts paid to Nicholas and funds formerly controlled by Pires that were frozen in a separate action brought by the Securities and Exchange Commission, *SEC v. MCC Int'l Corp.*, No. 22-cv-14129 (S.D. Fla.), Pires and Goncalves received $32,179,070 in ill-gotten gains as a result of the EmpiresX scheme.

**Defendants' Shutdown of EmpiresX**

17. Beginning in or around October 2021, Nicholas, acting on behalf of Empires Consulting, called certain participants and directed them to delete any promotional videos regarding the EmpiresX Pools. In a notice posted on the Empires Consulting website, the company stated that promotional materials "need[ed] to be revised and authorised by regulatory authorities in order to be posted in any internet platform or marketing material," and that "EmpiresX had been

notified of these actions that need to be taken in order for the company to avoid issues with its registrations and processing." Empires Consulting had not received any notice from the Commission or the Securities and Exchange Commission regarding its marketing materials, registrations, or processing, nor had it been so notified by any other regulatory agency or authority.

18. Beginning in at least November 2021, Empires Consulting restricted participants' ability to withdraw funds purportedly because of a "problem" with a cryptocurrency exchange used by Empires Consulting. In fact, Empires Consulting was routinely preventing participants from withdrawing funds from their accounts; and since November 2021, participants have been largely unable to withdraw their funds.

19. Instead of returning money from EmpiresX bank accounts to pool participants, Pires and Goncalves used the funds for their personal benefit, including more than $330,000 in debit card purchases for daily expenses including dining and shopping at luxury retailers. Pires and Goncalves spent more than $250,000 on travel, including airfare, luxury hotels, and vacation rentals.

B. **Conclusions of Law**

**Jurisdiction and Venue**

20. The Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. section 13a-1, which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

21. Venue properly lies with the Court under 7 U.S.C. section 13a-1(e), because the Defendants reside or transact business in this jurisdiction and the acts and practices in violation of the Act and Regulations occurred, are occurring or are about to occur within this District, among other places.

**Count I: Fraud**

22. By the conduct described in paragraphs 15–49 of the Complaint and paragraphs 10–18 above, Defendants Pires, Goncalves, and Nicholas cheated and defrauded, or attempted to cheat and defraud, and willfully deceived, or attempted to deceive, pool participants and prospective participants by, among other things, knowingly or recklessly making material misstatements of fact regarding the performance of the EmpiresX Pools, the registration status of EmpiresX, and the expected profits and risk of loss, in violation of Section 6(c)(1) of the Act, 7 U.S.C. section 9(1), and Regulation 180.1(a)(1)–(3), 17 C.F.R. sections 180.1(a)(1)–(3) (2024).

**Count III: Failure to Register as an Associated Person of a Commodity Pool Operator**

23. By the conduct described in paragraphs 15–45 of the Complaint and paragraphs 6–9 above, Defendants Pires, Goncalves, and Nicholas acted as associated persons ("APs") of Empires Consulting, a commodity pool operator ("CPO"), without first registering with the Commission as such, and thereby violated Section 4k(2) of the Act, 7 U.S.C. section 6k(2).

**Count IV: Fraud and Deceit by a Commodity Pool Operator**

24. By the conduct described in paragraphs 15–49 of the Complaint and paragraphs 6–18 above, Pires, Goncalves, and Nicholas, while acting as APs of a CPO: (A) employed a device, scheme, or artifice to defraud any client or participant or prospective client or participant, and (B) engaged in transactions, practices, or courses of business that operated as a fraud or deceit

7

upon any client or participant or prospective client or participant, in violation of Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. sections 6*o*(1)(A) & (B).

### Count V: Commingling Funds by a Commodity Pool Operator

25. By the conduct described in paragraphs 15–49 of the Complaint and paragraphs 6–19 above, Pires and Goncalves, while acting as APs of a CPO, commingled the property of pools they operated or that they intended to operate with the property of other persons, and thereby violated Regulation 4.20(c), 17 C.F.R. section 4.20(c) (2024).

26. Defendants Pires and Goncalves controlled Empires Consulting Corp., directly or indirectly, and did not act in good faith; or knowingly induced, directly or indirectly, Empires Consulting Corp.'s acts in violation of the Act and Regulations. Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. section 13c(b), Pires and Goncalves are liable for Empires Consulting Corp.'s violations of Sections 4*o*(a)(1)(A) and (B), and 6(c)(1) of the Act, 7 U.S.C. sections 6*o*(a)(1)(A) & (B), 9(1), and Regulations 4.20(c) and 180.1(a)(1)–(3), 17 C.F.R. sections 4.20(c), 180.1(a)(1)–(3) (2024).

27. Unless restrained and enjoined by the Court, there is a reasonable likelihood that Defendants will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## II.   PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

28. Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. section 13a-1, Defendants Pires and Goncalves are each permanently restrained, enjoined, and prohibited from directly or indirectly:

    a.   In connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly: (1) use or employ, or attempt to use or employ,

        any manipulative devices, schemes, or artifices to defraud; (2) make, or attempt to make, any untrue or misleading statements of a material fact; (3) omit to state material facts necessary in order to make statements made not untrue or misleading; or (4) engage, or attempt to engage, in any acts, practices, or courses of business, which would operate or would operate as a fraud or deceit upon any person in connection with commodity transactions, in violation of Section 6(c)(1) of the Act, 7 U.S.C. section 9(1), and Regulation 180.1(a)(1)–(3), 17 C.F.R. sections 180.1(a)(1)–(3) (2024);

    b.    Acting as an AP of a CPO without registering with the Commission under the Act as such, in violation of Section 4k(2) of the Act, 7 U.S.C. section 6k(2);

    c.    While acting as an AP of a CPO, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, (A) employing any device, scheme, or artifice to defraud any client or participant or prospective client or participant, or (B) engaging in any transaction, practice, or course of business that operates as a fraud or deceit upon any client or prospective client or participant, in violation of Section 4*o*(1)(A) and (B), 7 U.S.C. section 6*o*(1)(A) & (B); and

    d.    While acting as an AP of a CPO, commingling the property of any pools it operates or that it intends to operate with the property of any other persons, in violation of Regulation 4.20(c), 17 C.F.R. section 4.20(c) (2024).

    29.    Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. section 13a-1, Defendant Nicholas is permanently restrained, enjoined, and prohibited from directly or indirectly:

  a. In connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly: (1) use or employ, or attempt to use or employ, any manipulative devices, schemes, or artifices to defraud; (2) make, or attempt to make, any untrue or misleading statements of a material fact; (3) omit to state material facts necessary in order to make statements made not untrue or misleading; or (4) engage, or attempt to engage, in any acts, practices, or courses of business, which would operate or would operate as a fraud or deceit upon any person in connection with commodity transactions, in violation of Section 6(c)(1) of the Act, 7 U.S.C. section 9(1), and Regulation 180.1(a)(1)–(3), 17 C.F.R. sections 180.1(a)(1)–(3) (2024);

  b. Acting as an AP of a CPO without registering with the Commission under the Act as such, in violation of Section 4k(2) of the Act, 7 U.S.C. section 6k(2); and

  c. While acting as an AP of a CPO, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, (A) employing any device, scheme, or artifice to defraud any client or participant or prospective client or participant, or (B) engaging in any transaction, practice, or course of business that operates as a fraud or deceit upon any client or prospective client or participant, in violation of Section 4*o*(1)(A) and (B), 7 U.S.C. sections 6*o*(1)(A) & (B).

30. Pires, Goncalves, and Nicholas, each, is also permanently restrained, enjoined and prohibited from directly or indirectly:

  a. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. section 1a(40));

10

b. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. section 1.3 (2024)), for his own personal account or for any account in which he has a direct or indirect interest;

c. Having any commodity interests traded on his behalf;

d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

e. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

f. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. section 4.14(a)(9) (2024); and/or

g. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. section 3.1(a) (2024)), agent or any other officer or employee of any person (as that term is defined in 7 U.S.C. section 1a(38)), registered, exempted from registration or required to be registered with the Commission except as provided for in 17 C.F.R. section 4.14(a)(9) (2024).

### III. DISGORGEMENT AND CIVIL MONETARY PENALTY

**A. Disgorgement**

31. Defendants Pires and Goncalves shall pay, jointly and severally, disgorgement in the amount of thirty-two million, one hundred seventy-nine thousand, seventy dollars ($32,179,070) ("Joint Disgorgement Obligation"), representing the gains received in connection

with such violations. If the Joint Disgorgement Obligation is not paid immediately, then post-judgment interest shall accrue on the Disgorgement Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. section 1961.

32. Defendants Pires and Goncalves shall pay the Joint Disgorgement Obligation and any post-judgment interest by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> 6500 S. MacArthur Blvd.
> HQ Room 266
> Oklahoma City, OK 73169
> 9-AMC-AR-CFTC@faa.gov

If payment by electronic funds transfer is chosen, Defendants shall contact the Federal Aviation Administration at the email address above to receive payment instructions and shall fully comply with those instructions. Defendants shall accompany payment of the Joint Disgorgement Obligation with a cover letter that identifies Defendants and the name and docket number of this proceeding. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

33. Defendant Nicholas shall pay disgorgement in the amount of two hundred eighty-nine thousand ($289,000) ("Nicholas Disgorgement Obligation"), representing the gains received in connection with such violations. If the Nicholas Disgorgement Obligation is not paid immediately, then post-judgment interest shall accrue on the Nicholas Disgorgement Obligation

beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. section 1961.

34. Defendant Nicholas shall pay the Nicholas Disgorgement Obligation and any post-judgment interest by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> 6500 S. MacArthur Blvd.
> HQ Room 266
> Oklahoma City, OK 73169
> 9-AMC-AR-CFTC@faa.gov

If payment by electronic funds transfer is chosen, Defendant shall contact the Federal Aviation Administration at the email address above to receive payment instructions and shall fully comply with those instructions. Defendant shall accompany payment of the Nicholas Disgorgement Obligation with a cover letter that identifies Defendant and the name and docket number of this proceeding. Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

**B.    Civil Monetary Penalty**

35. Defendants Emerson Pires and Flavio Goncalves shall pay, jointly and severally, a civil monetary penalty in the amount of ninety-six million, five hundred thirty-seven thousand, two hundred and ten dollars ($96,537,210) ("Joint CMP Obligation"). If the Joint CMP Obligation is not paid immediately, then post-judgment interest shall accrue on the Joint CMP Obligation

beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. section 1961.

36. Defendants Pires and Goncalves shall pay the Joint CMP Obligation and any post-judgment interest, by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> 6500 S. MacArthur Blvd.
> HQ Room 266
> Oklahoma City, OK 73169
> 9-AMC-AR-CFTC@faa.gov

If payment by electronic funds transfer is chosen, the Defendants Pires and Goncalves shall contact the Federal Aviation Administration at the email address above to receive payment instructions and shall fully comply with those instructions. Defendants shall accompany payment of the Joint CMP Obligation with a cover letter that identifies Defendants and the name and docket number of this proceeding. Defendants Pires and Goncalves shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

37. Defendant Nicholas shall pay a civil monetary penalty in the amount of eight hundred and sixty-seven thousand dollars ($867,000) ("Nicholas CMP Obligation"). If the Nicholas CMP Obligation is not paid immediately, then post-judgment interest shall accrue on the Nicholas CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. section 1961.

38. Defendant Nicholas shall pay the Nicholas CMP Obligation and any post-judgment interest, by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> 6500 S. MacArthur Blvd.
> HQ Room 266
> Oklahoma City, OK 73169
> 9-AMC-AR-CFTC@faa.gov

If payment by electronic funds transfer is chosen, Defendant Nicholas shall contact the Federal Aviation Administration at the email address above to receive payment instructions and shall fully comply with those instructions. Defendant Nicholas shall accompany payment of the Nicholas CMP Obligation with a cover letter that identifies Defendants and the name and docket number of this proceeding. Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

**C.     Provisions Related to Monetary Sanctions**

39. Partial Satisfaction: Acceptance by the Commission or the Monitor of any partial payment of a Defendant's Disgorgement Obligation or CMP Obligation shall not be deemed a waiver of Defendant's obligation to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

**IV.     Miscellaneous Provisions**

40. Notice: All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

>Robert T. Howell
>Deputy Director, Division of Enforcement
>Commodity Futures Trading Commission
>77 W Jackson Blvd., Suite 800
>Chicago, IL 60604

All such notices to the Commission shall reference the name and docket number of this action.

41. Change of Address/Phone: Until such time as each Defendant satisfies in full his Disgorgement Obligation and CMP Obligation as set forth in this Order, he shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten calendar days of the change.

42. Invalidation: If any provision of this Order or if the application of any provision or circumstance is held invalid, then the remainder of this Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

43. Continuing Jurisdiction of the Court: The Court retains jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action, including any motion by Defendants to modify or for relief from the terms of this Order.

44. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Order shall be binding upon Defendants, upon any person under the authority or control of any of the Defendants, and upon any person who receives actual notice of this Order, by personal service, email, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendants.

There being no just reason for delay, the Clerk of Court is hereby ordered to enter this Order for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief forthwith and without further notice.

**DONE AND ORDERED** in Miami, Florida, this 4th day of February, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**